**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RABBI DAVID SLOMOVITZ, NATHAN FRANKEL, EDWARD HANDLER, SAMUEL LANDY, MIRIAM LEVITZ, HARRY LIEBER, DAVID REICH, ABRAHAM TAUBER, and MORRIS WALDMAN,<br><br>Plaintiffs,<br><br>v.<br><br>THE ENCLAVE AT FAIRWAYS HOMEOWNERS ASSOCIATION, INC., a New Jersey Domestic Corporation,<br><br>Defendant. | Civil No. 3:18-cv:16910<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR COUNSEL FEES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54 AND LOCAL CIV. RULES 54.2**<br><br>**Returnable: April 1, 2019** |


Sieglinde K. Rath
Sieglinde K. Rath (07049)
9344 Common Brook Road
Owings Mills, Maryland 21117
Tel: 410-559-6325
Fax: 202-315-3996
*Attorney for Plaintiffs*

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**…………………………………………………………………ii

**FACTUAL AND PROCEDURAL BACKGROUND**……………………………………….1

**ARGUMENT**………………………………………………………………………………..6

**I. PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEY FEES AND COSTS**……………………………………………………………………6

**II. THE AMOUNT OF THE FEE REQUEST IS REASONABLE AND APPROPRIATE**…………………………………………………………………9

A. The Hourly Rates Charged Are Documented and Reasonable………………........................................................................9

1. Plaintiffs' Counsels' Experience Warrants The Requested Rates…………….9

2. The Requested Rates are Consistent with Rates Charged in the District…...11

3. Plaintiffs' Hours are Reasonable Based on the Results Achieved…………..11

**CONCLUSION**……………………………………………………………………………12

**TABLE OF AUTHORITIES**

**Cases**

*Blum v. Stenson,* 465 U.S. 886, 895 (1984)) .......... 9

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) .......... 7

*Conservation Force v. Porrino*, No. CV1604124FLWLHG, 2017 WL 1488129 (Apr. 25, 2017 D.N.J. 2017) .......... 6

*Farrar v. Hobby,* 506 U.S. 103 (1992) .......... 11

*Hensley v. Eckerhart*, 461 U.S. 424(1983). .......... 6, 8

*Hewitt v. Helms,* 482 U.S. 755 (1987), .......... 7

*Hurley v. Atlantic City Police Dep't,* 174 F.3d 95 (3d Cir.1999) .......... 9

*Jama v. Esmor Correction Servs., Inc.,* 577 F.3d 169 (3d Cir. 2009) .......... 11

*Maher v. Gagne*, 448 U.S. 122 (1980) .......... 7

*People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3d Cir. 2008) .......... 6

*Planned Parenthood of Cent. N.J. v. The Attorney General of N.J .,* 297 F.3d 253 (3d Cir.2002) .......... 9

*Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995) .......... 9

*Raab v. City of Ocean City,* 833 F.3d 286 (3d Cir. 2016) .......... 7

*Rhodes v. Stewart,* 488 U.S. 1 (1988) (per curiam). .......... 7

*Scanno v. F.H. Cann & Assocs., Inc.*, No. 16CV5943MCALDW, 2018 WL 4522075 (D.N.J. Sept. 5, 2018) .......... 11

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly,* 195 F. App'x 93, 95 (3d Cir. 2006) .......... 6

*Tex. State Teachers Assn. v. Garland Indep. School Dist.,* 489 U.S. 782, 792 (1989) .......... 7

*Unite Here, Local 54 v. Atlantic City,* 2012 WL 1455249 at *3 (D.N.J. Apr. 26, 2012) .......... 7

*Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990). ........................................................ 9

*Vukovich v. Haifa, Inc.*, No. CIV A 03-737 FLW, 2007 WL 2596547 (D.N.J. Sept. 5, 2007).. 8, 9

*Ward v. Philadelphia Parking Auth.*, 634 F. App'x 901, 903 (3d Cir. 2015)……………………..7

**Statutes**

42 U.S.C.§ 1983 ........................................................................................................................ 6

42 U.S.C. § 1982 ........................................................................................................................ 6

42 U.S.C. § 1988 .................................................................................................................. 6, 7

42 U.S.C. §§ 3604(b)……………………………………………………………………...6

42 U.S.C. § 3613 ........................................................................................................................ 6

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 6, 2018, Plaintiffs Rabbi David Slomovitz, Nathan Frankel, Edward Handler, Samuel Landy, Harry Lieber, David Reich, Abraham Tauber, Morris Waldman, and Miriam Levitz (the "Plaintiffs"), all residents of an active adult over-age 55 gated community known as The Enclave at the Fairways ("The Enclave") in Lakewood Township, N.J., filed their Complaint against Defendant The Enclave at the Fairways, Homeowners Association, Inc. (the "HOA"), alleging violations of the Fair Housing Act, 42 U.S.C. § 1982, and New Jersey law. Plaintiffs' Complaint arises out of the HOA's actions targeting the Plaintiffs based on their Orthodox Jewish identity (Dkt. #1).

As the number of homes owned by Orthodox Jews in The Enclave had increased in the last two years, the HOA had taken a series of escalating actions targeting these Orthodox Jewish residents, including preventing them from leaving The Enclave to attend services on the Sabbath and Holy Days; preventing Orthodox Jewish residents from receiving visitors at their homes on such days; discriminatorily enforcing rules about visitors in a way that predominantly if not exclusively obstructs the families and friends of Orthodox Jewish residents from visiting on the Sabbath; and enforcing rules to prevent Orthodox Jewish residents from gathering for prayer activity in their homes. (Dkt. #2-1 at 1-2.) These actions targeted the Orthodox Jewish residents including the Plaintiffs of The Enclave because of their race and religion. *Id.* at 2.

Plaintiffs filed a Motion for a Temporary Restraining Order ("TRO Motion") contemporaneously with their Complaint. (Dkt. #2.) The evidence in the Declarations submitted in support of the TRO Motion demonstrated the HOA's hostility toward the Plaintiffs and other Orthodox Jews based on their race and religion. Significantly, it included that:

A. Rabbi Slomovitz has been labeled a "Jew" in The Enclave's computer system. (Dkt. #2-7 ¶¶ 3-8); he was prohibited from having individuals at his home for prayer services (Dkt. #2-9 ¶¶ 7-10); his membership rights with the HOA have been suspended for illegitimate and illegal reasons, *id.* ¶¶ 11-13; he has also been fined $7,675. *Id.* ¶¶ 9-10. Although he is a Rabbi, the Defendant prohibited him from having a Sukkah, *id.* ¶ 17, and he was also forbidden from using the clubhouse, exercise room and pool at The Enclave. *Id.* ¶ 18.

B. Orthodox Jews were required by the Defendant to place a large, brightly colored yellow or orange sheet of paper in their front window in order to have a Sukkah during the Jewish Sukkot holiday--an identification of which homes are owned by Jews--which is demeaning and offensive to them, while no such requirement is enforced for Christmas and Easter decorations. (Dkt. #2-3 ¶¶ 8-9; Dkt. #2-10 ¶ 8 & Exh. A; Dkt. #2-6 ¶¶ 10-11; Dkt. #2-12 ¶ 11; Dkt. #2-8 ¶ 10; Dkt. #2-2 ¶ 9.)

C. Defendant organized a short-lived neighborhood watch program to monitor and challenge Orthodox Jews entering The Enclave on the Jewish Sabbath. (Dkt. #2-14 ¶ 35.)

D. Other residents also targeted the Plaintiffs. See Dkt. #2-4 ¶¶ 7-9 (neighbor said they had no right to walk on the sidewalk because they were Orthodox Jews; resident told granddaughter that she did not have the right to be in The Enclave for same reason); Dkt. #2-10 ¶¶ 6-7 (son and children accosted by an Enclave resident who yelled at them because they were Jewish); Dkt. #2-5 ¶¶ 10-12 (two people sitting in front of residence watching the gate for the entrance of Orthodox Jewish residents and their family and friends); Dkt. #2-12 ¶¶ 8-9 (resident yelled at and took pictures of grandchildren); Dkt. #2-2 ¶¶ 5-8 (Enclave resident yelled "Fucking Jews" and "This place is becoming a zoo," among other statements); Dkt. #2-14 ¶¶ 40-43 (Orthodox Jewish resident told that he "did not belong" in The Enclave; screamed at by resident

at an HOA meeting with no action taken by the Board; "booed" at by other residents; and spat upon by a female resident of The Enclave).)

E. The pedestrian gate at The Enclave's Damiano Way exit remained unlocked for approximately eleven years until 2016, when Orthodox Jewish residents began using it to travel to synagogues. (Dkt. #2-14 ¶¶ 21-22.) After some Orthodox Jewish residents walked around the existing tall fence on the Sabbath on November 23 and 24, 2018, The Enclave then immediately extended that fence. *Id.* ¶¶ 30-31 & Exh. E.

F. The Defendant's actions in locking a gate, installing metal skirts under the vehicle gate, and building an eight foot-high solid fence adjacent to the gate located at The Enclave's Damiano Way exit that was used by Plaintiffs to attend worship services and visit with family members on the Sabbath and Holy Days (Dkt. #2-14 at ¶¶ 28-29, 32-33 & Exhs. C, D, F.) effectively barred Plaintiffs from attending synagogues near the Damiano Way exit and exercising their fundamental right to worship on their Sabbath and other Holy Days because of the hours that the HOA has locked the pedestrian gate. (Dkt. #2-3 ¶¶ 4-6; Dkt. #2-4 ¶¶ 3-5; Dkt. #2-10 ¶¶ 3-5; Dkt. #2-5 ¶¶ 8-9; Dkt. #2-6 ¶¶ 4-9; Dkt. #2-12 ¶¶ 3-5; Dkt. #2-8 ¶¶ 4-7; Dkt. #2-2 ¶¶ 3-4.)

G. The pedestrian gate requires the use of an electronic access key, which Orthodox Jews cannot use on the Sabbath and Holy Days. (Dkt. #2-14 ¶ 8; Dkt. #2-9 ¶¶ 4, 6.) The Plaintiffs purchased these homes to be close to their synagogues and families, and they must attend religious services on the Sabbath. *Id.*; (Dkt. #2-5 ¶¶ 4-6; Dkt. #2-9 ¶ 5.) Several Plaintiffs were unable to receive their family members and friends at their homes on the Sabbath and Holy Days because of the Defendant's actions. (Dkt. #2-3 ¶ 7; Dkt. #2-4 ¶ 6; Dkt. #2-12 ¶ 7; Dkt. #2-8 ¶¶ 8-9; Dkt. #2-2 ¶¶ 3-4; Dkt. #2-14 ¶¶ 44-45.) The Enclave could have used a mechanical lock, which Plaintiffs may use, but chose not to. (Dkt. #2-14 ¶ 11.) None of these actions were taken with respect to

The Enclave's other exit at Massachusetts Avenue, which is distant from Damiano Way and the synagogues attended by Orthodox Jewish residents of The Enclave. (Dkt. #2-14 ¶¶ 12, 14, 19, 34 & Exh. B.)

H. The targeting of Plaintiffs and other Orthodox Jews has created great hardship to them with respect to their ability to practice their religion. Dkt. #2-3 ¶ 6 (being forced to bend under a gate was "physically difficult and humiliating"); Dkt. #2-4 ¶ 4 (difficult climbing over gate with hip replacement); Dkt. #2-10 ¶ 4 (bending under gate was painful because of back issues); Dkt. #2-5 ¶ 8 (impossible for husband to move his body over or under the gate); Dkt. #2-6 ¶¶ 7-8 (forced to stop attending religious services; fears not being able to return home); Dkt. #2-12 ¶ 5 (could only bend under gate with children's help); Dkt. #2-8 ¶ 5.) There was no more option to pass the gate during hours necessary for Plaintiffs to travel, and the Defendant had placed skirts under the vehicle gate, and eight-foot-high walls adjoining the gate. (Dkt. #2-14 ¶ 32-33 & Exh. F; Dkt. #2-8 ¶¶ 5-7; Dkt. #2-2 ¶ 4.) Plaintiff Handler could no longer attend services at his synagogue. (Dkt. 2-4 ¶ 5; see also Dkt. 2-2 ¶ 4 (cannot fully attend religious services).) It was dangerous for all Plaintiffs (and impossible for some) to walk to services the lengthy distance around from the other exit on Massachusetts Avenue, where there are no sidewalks, poor lighting, several hills and extremely narrow shoulders. (Dkt. #2-10 ¶ 5; Dkt. #2-5 ¶ 9 (husband uses walker); Dkt. #2-12 ¶ 7; Dkt. #2-14 ¶ 15.)

As a result of the above[1], the Plaintiffs sought preliminary and permanent orders enjoining Defendant to either leave open the Damiano Way gate from two hours before sunset on Fridays to

---

[1] Plaintiff Reiss had filed an action in December 2017 against the Defendant with the U.S. Department of Housing and Urban Development and the New Jersey Attorney General's Division of Civil Rights regarding several of the same issues. Despite a Settlement Agreement being negotiated, the HOA refused to sign it. Dkt. #2-14 ¶¶36-39.

after sunset on Saturdays and for similar times on Holy Days, or to provide access to and from the pedestrian gate located at The Enclave's exit on Damiano Way ("Damiano pedestrian gate" and "Damiano exit," respectively) without use of electronic devices; enjoining the HOA to cease and desist from punishing Orthodox Jewish homeowners for conducting prayer gatherings in their homes; enjoining the HOA from restricting Orthodox Jewish homeowners from authorizing guests for more than one day; and enjoining the HOA from requiring pedestrian guests of Orthodox Jewish homeowners to be accompanied by a homeowner during the Sabbath and on holy days and relief specific to Plaintiff Rabbi David Slomovitz in rescinding fines against him and reinstating his HOA privileges.[2] (Dkt. #2.)

The Court scheduled a hearing on the TRO Motion for December 13, 2018. At the hearing, the Defendant agreed to a remedy accommodating Plaintiffs' religious needs and preventing further discrimination against the Plaintiffs. Subsequently, a Consent Order was prepared and entered by the Court on February 6, 2019. (Dkt. #14.) Under the terms of the Consent Order, the Plaintiffs were largely successful on its application before the Court. The relief obtained included:

- Having the Damiano Way pedestrian gate permanently unlocked and left open during religious observances such as the Sabbath and high holy days (Dkt. #14 ¶ 1);
- Permitting prayer meetings within certain guidelines in residents' homes without action against them by the HOA (Dkt. #14 ¶ 2);
- Establishing a guest policy such that members of the Orthodox Jewish community are not discriminated against (Dkt. #14 ¶ 3);

[2] Plaintiffs' Complaint formed the underlying basis for the TRO and sought essentially the same relief on behalf of the Plaintiffs. (Dkt. #1.)

- Waiving and/or rescinding all fines, attorneys' fee, and/or citations issued to Plaintiff Rabbi David Slomovitz and restoring his membership rights (Dkt. #14 ¶¶ 4-5);
- Providing for Sukkah guidelines (Dkt. #14 ¶ 6.)

It is against this backdrop that the Plaintiffs seek an award of attorneys' fees from the Defendant.

## ARGUMENT

### I. PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEY FEES AND COSTS.

Plaintiffs filed suit on several grounds, including claims under the Fair Housing Act, 42 U.S.C. §§ 3604(b) and 3617, and for violation of their civil rights pursuant to 42 U.S.C. § 1982. (Dkt. #1.) The Fair Housing Act provides for recovery of attorneys' fees pursuant to 42 U.S.C. § 3613, which provides in pertinent part:

> **(c)(2)** In a civil action under subsection (a) of this section, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs.

Attorneys' fees may also be granted in civil rights actions such as this one brought under 42 U.S.C. § 1982, pursuant to the provisions of 42 U.S.C. § 1988(b). The basis for this has been summarized by this Court as follows:

> Congress has also authorized fee awards in § 1983 actions for the violation of constitutional rights. "In civil rights cases . . . courts 'may allow the prevailing party . . . a reasonable attorney's fee.'" *People Against Police Violence*, 520 F.3d at 232 (quoting 42 U.S.C. § 1988(b)). "Pursuant to this authority, the 'prevailing party' in such cases is normally awarded attorneys' fees, absent special circumstances." *Id.* (quoting *Truesdell v. Philadelphia Hous. Auth.*, 290 F.3d 159, 163 (3d Cir. 2002)).
>
> Parties are considered "prevailing parties" if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (internal quotation marks omitted).

*Conservation Force v. Porrino*, No. CV1604124FLWLHG, 2017 WL 1488129, at *3 D.N.J. 2017); *see also Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly,* 195 F. App'x 93, 95 (3d Cir. 2006); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

A plaintiff is a "prevailing party" if they achieve similar results through a consent decree. Explaining the basis for prevailing party status in a case involving a consent order, the Supreme Court has held:

> Although a consent decree does not always include an admission of liability by the defendant, . . . it nonetheless is a court-ordered 'chang[e][in] the legal relationship between [the plaintiff] and the defendant.' *Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (citing *Hewitt, supra,* at 760–761, 107 S.Ct. 2672, and *Rhodes v. Stewart,* 488 U.S. 1, 3–4, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) *(per curiam)*). These decisions, taken together, establish that enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties" necessary to permit an award of attorney's fees.

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (emphasis added). *See also Unite Here, Local 54 v. City of Atl. City*, No. CIV. 11-6273 RBK/AMD, 2012 WL 1455249, at *3 (D.N.J. Apr. 26, 2012) (holding that "court-ordered consent decree does authorize prevailing-party status for the purposes of § 1988" (internal citations omitted)); *Raab v. City of Ocean City, New Jersey*, 833 F.3d 286, 293 (3d Cir. 2016) (citing *Maher v. Gagne*, 448 U.S. 122, 129 (1980) ("[t]he fact that [a plaintiff] prevailed through a settlement rather than through litigation does not weaken her claim to fees. Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated.")

A "material alteration of the legal relationship of the parties" has been found where a "Court's Order gave legal effect to the parties' agreement" and "it was not the mere fact of a lawsuit that catalyzed the change in Defendants' behavior." *Unite Here, Local 54 v. City of Atl. City,* 2012

WL 1455249, at *4; *see also Ward v. Philadelphia Parking Auth.*, 634 F. App'x 901, 903 (3d Cir. 2015) ("Court-ordered consent decrees, therefore, can give rise to the necessary material alteration in the legal relationship of the parties."). In further explaining this concept in relation to Consent Orders, the Third Circuit has held in a comparable situation under the Americans with Disabilities Act:

> The Consent Decree also requires the Parking Authority to post wheelchair accessible taxicab notices at the Philadelphia International Airport and 30th Street train station as well as advertise the service on its website. Wheelchair users can now request wheelchair accessible taxicabs from a dedicated dispatcher. Finally, the Parking Authority agreed to help further a policy whereby wheelchair accessible taxicabs are moved to the front of the cab-stand line to serve patrons using a wheelchair.
>
> This relief provides the plaintiffs with much of the principal benefit they sought through their lawsuit: an increase in the number of wheelchair accessible taxicabs. Although the plaintiffs have not received all of their requested relief, the Supreme Court, as well as our own, has stated that complete satisfaction is not a prerequisite to an award of attorneys' fees. Even where a plaintiff asked for a bundle and got a pittance, that pittance is enough to render him a prevailing party. The plaintiffs here have secured much more than a pittance for the disabled community of Philadelphia.
>
> This Consent Decree also materially altered the legal relationship of the parties. Court-ordered and judicially enforceable, the Consent Decree goes much further than Act 119. Furthermore, this material alteration—improved mobility for wheelchair bound-citizens—is exactly the type Congress sought to promote through the ADA and Rehabilitation Act. The ADA seeks to provide individuals with disabilities equality of opportunity, full participation, [and] independent living. By increasing the number of wheelchair accessible taxicabs in Philadelphia as well as the ease with which they can be called, the plaintiffs meaningfully improved the disabled community's freedom of movement and independence.

*Id.* at 904 (internal quotations omitted).

Here, as described above, Plaintiffs sought injunctive relief with respect to four categories, all of which it "prevailed" upon in the Consent Order. This Consent Order materially altered the relationship between the Defendant and the Orthodox Jewish resident members of the HOA and the relief granted extends to those residents' family and friends. As set forth below, Plaintiffs are

a prevailing party and entitled to an attorneys' fee award. The only issue before the Court is what is that reasonable fee. *Vukovich v. Haifa, Inc.*, No. CIV A 03-737 FLW, 2007 WL 2596547, at *2 (D.N.J. Sept. 5, 2007) ("the degree of the party's success goes to the amount of the ultimate award, not to the availability of an award."); *Hensley v. Eckerhart*, 461 U.S. at 429 ("prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." (internal citation omitted)).

## II. THE AMOUNT OF THE FEE REQUEST IS REASONABLE AND APPROPRIATE.

In the Third Circuit, the "starting point" for calculating reasonable attorneys' fees is determining the lode star. *Hurley v. Atlantic City Police Dep't,* 174 F.3d 95, 131 (3d Cir.1999); *Planned Parenthood of Cent. N.J. v. The Attorney General of the State of N.J .,* 297 F.3d 253, 265 n. 5 (3d Cir.2002). The lode star is "comprised of the applicable hourly rate for the legal services and the product of the hours reasonably expended" in the litigation. *Vukovich v. Haifa, Inc.*, No. CIV A 03-737 FLW, 2007 WL 2596547, at *2 (D.N.J. Sept. 5, 2007).

### A. The Hourly Rates Charged Are Documented and Reasonable.

"The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive." *Pub. Interest Research Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995). The Court is charged with determining the "prevailing market rates in the relevant community." *Id.* at 1185-86 (citing *Blum v. Stenson,* 465 U.S. 886, 895 (1984)). "Courts 'should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience, and reputation.'" *Vukovich* at *3 (citing *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990)).

As set forth more fully below, this rate is entirely reasonable in this District based on the vast expertise and experience of Plaintiffs' counsel and evidence of rates charged in this district showing that the requested rate is below the customary rate for similar work by counsel with similar qualifications.

1. *Plaintiffs' Counsels' Experience Warrants The Requested Rates.*

The notable experience of Plaintiffs' counsel in their respective areas of expertise are set forth in their Declarations. The law firm of Storzer & Associates , P.C. (formerly Storzer & Greene, P.L.L.C.) has extensive experience in handling religious liberty civil rights litigation and its practice consists primarily of such matters. Roman Storzer has been engaged in such matters for a significant period of time. *See* Declaration of Roman P. Storzer. Mr. Storzer's primary responsibility in this litigation has been supervising the litigation. Prior to entering private practice, he was Director of Litigation for the nonprofit organization The Becket Fund for Religious Liberty, and supervised several attorneys in religious rights litigation. In his private practice, since 2004 he has represented many religious organizations in RLUIPA, FHA and constitutional litigation. *Id.* Robert Greene has a similar background to Mr. Storzer and is a very experienced litigator with respect to religious liberty and constitutional claims, having been an attorney for over 40 years and in the field of religious liberty since the 1990s. *See* Declaration of Robert L. Greene. Sieglinde Rath is an associate and Christopher Costa "of counsel" with the firm, and both are admitted to the bar of New Jersey, 1991 and 1993 respectively. *See* Declarations of Sieglinde K. Rath and Christopher K. Costa. Both are attorneys with each having significant experience in this field. Ms. Rath has worked at the firm for over three years, and

Mr. Costa for over one year with the firm, but having vast experience in land use and zoning matters in New Jersey. *Id.* Blair Storzer, in her tenth year of practicing law, has been with the firm since 2014 and has particularized experience in religious liberty and constitutional matters as a result. *See* Declaration of Blair Lazarus Storzer. Sarah Child is an associate with the firm, graduated with honors from her law school and clerked for a federal magistrate judge before joining the firm. *See* Declaration of Sarah E. Child. All of these attorneys were billed at the rate of $400.00 per hour for the work expended in this matter. The work performed by each of the attorneys with respect to this matter is set forth in detail on the Declarations of each submitted with respect to this Motion.

The rates charged by Plaintiffs' counsel are customary or lower than in the geographic area for complex matters such as these. As set forth below, the rate of $400.00 per hour for the firm's lawyers are more than reasonable for attorneys with the range of credentials and experience set forth above and as detailed on their Declarations.

2. *The Requested Rates are Consistent with Rates Charged in the District.*

The requested rates are consistent with rates charged in this District. In determining a reasonable rate, courts look at evidence of rates charged in this District. Other hourly rates that have been approved are similar: $600.00 seven years ago in a religious civil rights case, *Jama v. Esmor Correction Services, Inc.,* 577 F.3d 169 (3d Cir. 2009); $500 per hour in an action pursuant to the Fair Debt Collection Practices Act, *Scanno v. F.H. Cann & Assocs., Inc.*, No. 16CV5943MCALDW, 2018 WL 4522075, at *2 (D.N.J. Sept. 5, 2018); $450 per hour in an action under the New Jersey Law Against Discrimination, *Andujar v. Gen. Nutrition Corp.,* No. CV 14-

7696 (JS), 2018 WL 3999569, at *2 (D.N.J. Aug. 20, 2018); and $625.00 in *Simring v. Rutgers*, 634 Fed. Appx. 853, 858 (3d Cir. 2015).

3. *Plaintiffs' Hours are Reasonable Based on the Results Achieved.*

The "most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (internal quotations omitted). Here, Plaintiffs filed their Complaint and sought injunctive relief with respect to four categories, all of which it "prevailed" upon in the Consent Order. "A prevailing party may also recover a reasonable attorney's fee for the preparation of the fee petition itself, which should be considered separately by the Court and may also be reduced based upon the success of the petition." *Scanno v. F.H. Cann & Assocs., Inc.* WL 4522075, at *2.

## CONCLUSION

Wherefore, Plaintiffs respectfully request an award of $84,044.65 in attorney's fees.

**STORZER & ASSOCIATES, P.C.**

*/s/ Sieglinde K. Rath*
Sieglinde K. Rath
9433 Common Brook Road
Suite 208
Owings Mills, MD 21117
rath@storzerlaw.com
Tel: (202) 857-9766
Fax: (202) 315-3996

*Attorneys for Plaintiffs*

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the within Motion, supporting Memorandum and Declarations as well as proposed form of Order have been served upon the following as follows:

**Electronically Filed**

Edward J. Turro, Esq.
Hueston McNulty, P.C.
256 Columbia Turnpike, Suite 207
Florham Park, New Jersey 07932
eturro@huestonmcnulty.com
*Attorney for Defendant*

/s/ Sieglinde K. Rath
Sieglinde K. Rath (07049)
9344 Common Brook Road
Owings Mills, Maryland 21117
Tel: 410-559-6325
Fax: 202-315-3996
*Attorney for Plaintiffs*