***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RABBI DAVID SLOMOVITZ, NATHAN FRANKEL, EDWARD HANDLER, SAMUEL LANDY, MIRIAM LEVITZ, HARRY LIEBER, DAVID REICH, ABRAHAM TAUBER, and MORRIS WALDMAN,<br><br>  Plaintiffs,<br><br>v.<br><br>THE ENCLAVE AT FAIRWAYS HOMEOWNERS ASSOCIATION, INC., A New Jersey Domestic Corporation,<br><br>  Defendant. | Civil Action No. 18-16910 (FLW) (TJB)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Before the Court is the motion of Plaintiffs Rabbi David Slomovitz, Nathan Frankel, Edward Handler, Samuel Landy, Harry Lieber, David Reich, Abraham Tauber, Morris Waldman, and Miriam Levitz ( "Plaintiffs"), for an award of attorneys' fees and costs as the prevailing party in this case against Defendant The Enclave at Fairways Homeowners Association, Inc. ("Defendant"). Plaintiffs brought suit against Defendant under the Fair Housing Act, 42 U.S.C. 3601 *et seq.* ("FHA"), 42 U.S.C. § 1982, and New Jersey law, alleging that Defendant discriminated against Plaintiffs because of their Orthodox Jewish identity. After the parties reached a settlement via a Court-ordered Consent Decree, Plaintiffs filed the present motion seeking fees and costs. For the reasons below, I grant Plaintiffs' motion, and award fees in the amount of $86,318.90.

1

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs brought this matter against Defendant, the homeowners association ("HOA") for The Enclave at Fairways ("The Enclave"), a fifty-five and over gated community in Lakewood Township, New Jersey, where Plaintiffs are homeowners. Compl. at ¶ 1. Plaintiffs allege that Defendant took actions targeting Plaintiffs based on their Orthodox Jewish identity. *Id.* at ¶ 2. They allege that, as the number of homes owned by Orthodox Jews at The Enclave increased in the two years prior to this lawsuit, the HOA took a series of escalating actions, including locking a pedestrian gate that prevented the Orthodox Jewish residents from leaving The Enclave to attend services on the Sabbath and Holy Days; preventing Orthodox Jewish residents from receiving visitors at their homes on such days; discriminatorily enforcing rules about visitors in a way that impeded the families and friends of Orthodox Jewish residents from visiting on the Sabbath; and enforcing rules to prevent Orthodox Jewish residents from gathering for prayer activity in their homes. *Id.* at ¶ 3.

On December 6, 2018, Plaintiffs filed the present Complaint, as well as a motion for a temporary restraining order ("TRO"). The Court held a conference on the TRO motion on December 13, 2018. At that time, Defendant agreed to a remedy accommodating Plaintiffs' religious needs. Subsequently, a Consent Order was prepared and entered by the Court on February 6, 2019. ECF No. 14. Under the terms of the Consent Order, the relief obtained included:

- Having the pedestrian gate permanently unlocked and left open during religious observances such as the Sabbath and High Holy Days; *id.* at ¶ 1,

- Permitting prayer meetings within certain guidelines in residents' homes without action against them by the HOA; *id.* at ¶ 2,

- Establishing a guest policy allowing members of the Orthodox Jewish community to freely enter the Enclave for religious observances; *id.* at ¶ 3,

- Waiving and/or rescinding all fines, attorneys' fee, and/or citations issued to Plaintiff Rabbi David Slomovitz and restoring his membership rights; *id.* at ¶¶ 4-5;

- Providing for Sukkah guidelines. *Id.* at ¶ 6.

Following the Court's adoption of the Consent Order, on March 8, 2019, Plaintiffs filed the present motion seeking an award of attorneys' fees and costs from Defendant.

## II. DISCUSSION

Plaintiffs contend that they are entitled to fees and costs, arguing that the issuance of the Consent Decree as a result of the parties' settlement entitles them to "prevailing party" status under both the 28 U.S.C. § 1988 and the FHA. Defendant responds that Plaintiffs do not deserve a fee award because the Consent Decree settled all claims, thereby implicitly waiving Plaintiffs' right to fees, and because the settlement was the product of extensive discussions that predated the filing of the Complaint. In the alternative, Defendant asks the Court to substantially reduce Plaintiffs' requested award. I will first address Plaintiffs' entitlement to fees before determining the amount of fees.

### A. Plaintiffs' Entitlement to Fees

"Under the 'American Rule,' parties to litigation are to pay their own attorneys' fees, absent statutory authority and a court order providing otherwise." *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 231 (3d Cir. 2008) (quoting *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't. of Health and Human Resources,* 532 U.S. 598, 602 (2001)). As relevant to this case, Congress has authorized fee awards in § 1983 actions for the violation of constitutional rights. "In civil rights cases . . . courts 'may allow the prevailing party

3

. . . a reasonable attorney's fee.'" *People Against Police Violence*, 520 F.3d at 232 (quoting 42 U.S.C. § 1988(b)). Indeed, Section 1988 allows attorneys' fees when enforcing the provisions of Sections 1981, 1982, 1983, 1985, and 1986. 42 U.S.C. § 1988(b). The Fair Housing Act also expressly provides for attorney's fees, and employs the same language as found in 42 U.S.C. § 1988. The standards for awarding fees under 42 U.S.C. § 1988 "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983). "Pursuant to this authority, the 'prevailing party' in such cases is normally awarded attorneys' fees, absent special circumstances." *Id.* (quoting *Truesdell v. Philadelphia Hous. Auth.,* 290 F.3d 159, 163 (3d Cir. 2002)).

Parties are considered "prevailing parties" if "they succeed on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." *J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.,* 287 F.3d 267, 271 (3d Cir. 2002) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)) (internal quotation marks omitted). To "succeed" under this standard, a party must achieve a "court-ordered 'change in the legal relationship between the plaintiff and the defendant.'" *Buckhannon,* 532 U.S. at 604 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792 (1989)). Therefore, courts may not award fees based on a "catalyst theory;" a plaintiff does not become a "prevailing party" solely because his lawsuit causes a voluntary change in the defendant's conduct. In that situation, the change in legal relationship lacks the requisite "judicial imprimatur." *Id.* at 601, 605.

In the present matter, Plaintiffs argue that they are entitled to fees as the prevailing party because the Consent Decree materially altered the relationship between the parties. They argue— and Defendant does not contest—that through the decree, Plaintiffs largely obtained the

injunctive relief they sought by, for example, having the pedestrian gate permanently unlocked during religious observances, permitting prayer meetings in residents' homes, and establishing a guest policy for members of Orthodox Jewish community. In that regard, Plaintiffs are correct that such a consent decree is sufficient to confer prevailing party status. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (emphasis added) ("Although a consent decree does not always include an admission of liability by the defendant, . . . it nonetheless is a court-ordered 'chang[e][in] the legal relationship between [the plaintiff] and the defendant.'"). *See also Raab v. City of Ocean City, New Jersey*, 833 F.3d 286, 293 (3d Cir. 2016) (citing *Maher v. Gagne*, 448 U.S. 122, 129 (1980) ("The fact that [a plaintiff] prevailed through a settlement rather than through litigation does not weaken her claim to fees. Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated."); *Unite Here, Local 54 v. City of Atl. City*, No. 11-6273, 2012 WL 1455249, at *3 (D.N.J. Apr. 26, 2012) (holding that "court-ordered consent decree does authorize prevailing-party status for the purposes of § 1988" (internal citations omitted)). These decisions, taken together, establish that court-ordered consent decrees create the "material alteration of the legal relationship of the parties" necessary to permit an award of attorney's fees.

Defendant does not dispute that consent decrees typically entitle the prevailing party to fees. Rather, Defendant first argues that, although this Consent Decree granted Plaintiffs substantial relief, the agreement purported to "settle, fully and finally, any and all claims among [the parties]," which implicitly included attorneys fees. ECF No. 14 at 2. According to Defendant, this language clearly evidenced that the parties intended to come to a complete

5

resolution of all claims, and Plaintiffs should, therefore, be "equitably estopped" from obtaining a fee award. This argument is a non-starter. It appears that what Defendant argues is that Plaintiffs may have waived any attorneys' fees by resolving the dispute through settlement. When the parties to a settlement agreement dispute whether the prevailing party waived its statutory right to attorney's fees, "the burden is on the losing party to show that the settlement agreement clearly waived" such right. *El Club Del Barrio, Inc. v. United Community Corps.,* 735 F.2d 98, 99 (3d Cir. 1984). In *El Club Del Barrio,* the Third Circuit expressly held that a suit for recovery of attorney's fees is foreclosed only upon express stipulation in the settlement agreement: "If the parties cannot agree on counsel fees and the losing party wishes to foreclose a suit ... for attorneys fees, it must insist that a stipulation to that effect be placed in the settlement agreement.." *Id.* at 101. Here, as in *Club de Barrio,* the settlement agreement contains no such stipulation, and, in fact, is entirely silent regarding Plaintiffs' right to fees. Thus, even if the parties did understand the agreement to be a global settlement, the agreement does not extinguish Plaintiff's entitlement to fees because it was Defendant's responsibility to ensure that a fee waiver was included in the agreement. *See Lima v. Newark Police Dep't*, 658 F.3d 324, 330 (3d Cir. 2011) ("Where the plaintiff does so prevail, however, in the absence of an express waiver, she will be deemed to have retained her statutory right to an award of reasonable attorney's fees. Therefore, where a defendant seeks to settle its total liability on a claim, it shall be incumbent upon the defendant to secure an express waiver of attorney's fees. Silence will not suffice." (internal quotations omitted)); *Torres v. Metro. Life Ins. Co.*, 189 F.3d 331, 332–33 (3d Cir. 1999) (rejecting argument that settlement agreement was a "global agreement" extinguishing a claim for attorney's fees, as fee waiver must be in writing.).

Defendant next argues that the ultimate settlement was a product of negotiations that predated the filing of the Complaint and was "substantially similar to the proposals being negotiated with the OCR from August to November 2018." ECF No. 17 at 6. According to Defendant, Plaintiffs, consequently, do not deserve fees for the limited work that the present lawsuit required. Again, however, the Third Circuit in *Clue del Barrio* expressly foreclosed such an argument by mandating that a losing party include a fee waiver in the settlement agreement. There, the court noted that "[r]equiring the district court to inquire into the circumstances of settlement negotiations and to determine who said what to whom when seems a pointless exercise where observance of a formality will suffice." *El Club Del Barrio*, 735 F.2d at 100–01. As such, courts are prohibited from looking to extrinsic evidence outside of the settlement agreement itself when determining a party's entitlement to fees. *Torres*, 189 F.3d at 334 ("We continue to believe that consideration of extrinsic evidence in these circumstances unnecessarily complicates litigation and that adherence to a clear rule of law is preferable. A bright-line rule serves the additional virtue of promoting informed settlements, as the parties will know in advance whether their agreement truly forecloses a post-settlement petition for fees." (internal quotations omitted)). *See also Lima*, 658 F.3d at 331 ("[W]e note that the District Court erred by considering evidence extrinsic to the Offer in violation of *El Club Del Barrio,* 735 F.2d at 100, and by considering the subjective intentions of the parties in violation of *Torres,* 189 F.3d at 333."). Defendant, therefore, cannot use evidence arising from the course of settlement negotiations to argue that Plaintiffs are not entitled to fees. To the extent that Defendant argues Plaintiffs are not entitled to prevailing party status because these prior negotiations decreased counsel's workload in the present litigation, such an argument has no bearing on Plaintiffs'

entitlement to fees, as the focus of the inquiry is the result of the litigation, not the time spent on the litigation. Such an argument relates to the hours that counsel worked, and, consequently, to the amount of fees owed, which I discuss in the next section.

Accordingly, I find that Plaintiffs are entitled to attorneys' fees as the prevailing party in this suit.

### B. Amount of Fees

The Court having found that Plaintiffs are entitled to attorneys' fees as the prevailing party, the only remaining question is the extent of the fees to be granted. Plaintiffs, as "[t]he party seeking attorney's fees ha[ve] the burden to prove that [their] request ... is reasonable." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). In the Third Circuit, the "starting point" for calculating reasonable attorneys' fees is determining the lode star. *Hurley v. Atlantic City Police Dep't,* 174 F.3d 95, 131 (3d Cir. 1999); *Planned Parenthood of Cent. N.J. v. The Attorney General of the State of N.J .,* 297 F.3d 253, 265 n. 5 (3d Cir. 2002). The lode star is "comprised of the applicable hourly rate for the legal services and the product of the hours reasonably expended" in the litigation. *Vukovich v. Haifa, Inc.*, No. 03-737, 2007 WL 2596547, at *2 (D.N.J. Sept. 5, 2007) (quoting *Hensley,* 461 U.S. at 433). The Court has substantial discretion in determining what constitutes a reasonable rate and reasonable hours. *Lanni v. New Jersey*, 259 F.3d 146, 148 (3d Cir. 2001).

Here, six attorneys billed 232.1 hours, all at an hourly rate of $400.00, which Plaintiffs agreed to in the retainer agreement. In support of their entitlement to these fees, Plaintiffs' counsel has submitted declarations showing their experience in the field of civil rights and religious liberty litigation, and that the requested rates are generally in line with rates charged in this District. *See, e.g., Jama v. Esmor Correction Services, Inc.,* 577 F.3d 169 (3d Cir. 2009)

(approving hourly rate of $600.00 seven years ago in a religious civil rights case); *Scanno v. F.H. Cann & Assocs., Inc.*, No. 16-5943, 2018 WL 4522075, at *2 (D.N.J. Sept. 5, 2018) (approving hourly rate of $500 per hour in an action pursuant to the Fair Debt Collection Practices Act); *Andujar v. Gen. Nutrition Corp.,* No. 14-7696, 2018 WL 3999569, at *2 (D.N.J. Aug. 20, 2018) ($450 per hour in an action under the New Jersey Law Against Discrimination). Based on these representations, I am satisfied—with the one caveat discussed below—that Plaintiffs' hourly fees are reasonable. Moreover, the 232.1 hours that these attorneys billed to draft a complaint and a TRO motion, conduct settlement discussions, and then prepare the present fee motion does not appear to be unduly large.[1] Finally, it is clear from the terms of the settlement that Plaintiffs largely obtained the injunctive relief that they requested, indicating that Plaintiffs' counsel were successful in their representation. *See Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (internal quotations omitted) (noting that the "most critical factor in determining the reasonableness of a fee award is the degree of success obtained").

In opposition, Defendant offers only vague and general challenges to the reasonableness of the requested fees. For instance, Defendant broadly contends that it was unnecessary for six attorneys to work on a matter of this scope and complexity. However, "the use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work," *Johnson v. Univ. Coll. of Univ. of Alabama in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983), and a reduction for duplication "is warranted only if the attorneys are *unreasonably* doing the *same* work." *Rode*, 892 F.2d at 1187 (quoting *Jean v. Nelson,* 863 F.2d 759, 773 (11th Cir.1988)) (emphasis

---

[1] With regard to the present motion, the Court is aware that "[a] prevailing party may also recover a reasonable attorney's fee for the preparation of the fee petition itself, which should be considered separately by the Court and may also be reduced based upon the success of the petition." *Scanno*, 2018 WL 4522075, at *2. For ease of discussion, I have combined the fees for the attorneys' work on the matter and for their work on the petition itself. However, in deciding this motion, I did consider the additional 22.1 hours worked on the fee petition, and find the hours worked and rates charged to be reasonable.

original). The Court, after reviewing the time entries, cannot discern any such unnecessary duplication, and, what is more, Defendant has failed to specifically explain how any work performed by two or more attorneys was unreasonable or duplicative.[2] Defendant also contends that the 90.27 hours spent preparing the initial pleadings and TRO motion were unreasonable because the case "did not involve complicated facts or contentions." ECF No. 17 at 10, 12. This argument is also misplaced: Counsel for Plaintiffs filed a 30-page Complaint alleging six counts of discriminatory conduct under the Fair Housing Act, 42 U.S.C. § 1982, and New Jersey Law, and submitted declarations from eleven individuals—including the nine plaintiffs—to support its TRO motion. Although the case might not have involved the most complicated factual scenario imaginable, Plaintiffs' pleadings and TRO motion are indicative of thorough, appropriately detailed lawyering that assisted Plaintiff to achieve a successful result. Defendant's vague arguments to the contrary, which are unaccompanied by concrete examples, are not sufficient to convince the Court that the requested fees are unreasonable. *See Bell v. United Princeton Properties*, *Inc.*, 884 F.2d 713, 720 (3d Cir. 1989) (holding that "the adverse party's submissions cannot merely allege in general terms that the time spent was excessive….The briefs must be specific and clear enough that the fee applicants have a fair chance to respond and defend their request").

      I do, however, agree with counsel for Defendants that counsel's blended rate of approximately $400.00 per hour is unreasonably high for the junior associates who worked on

---

[2] The only specific challenge that Defendant makes to counsel's hours is the 13.02 hours that Plaintiffs' attorneys spent conferring and communicating with each other, which Defendant calls "duplicative." But, Defendant fails to explain how the work behind this relatively modest number of hours was duplicative, or why it would be unreasonable for six attorneys to collectively bill this number of hours to discuss the preparations for this case. *See Downey v. Coal. Against Rape & Abuse, Inc.*, No. 99-3370, 2005 WL 2452769, at *3 (D.N.J. Sept. 30, 2005) (explaining that while the adverse party's objections need not challenge every specific time entry believed to be unreasonable or unnecessary, the basis for the objections must be clear). As such, I reject this objection.

the matter. Of the six attorneys, four are experienced attorneys who all typically billed at an hourly rate of $450.00 per hour. The remaining two attorneys are less experienced associates: Associate 1 is a 2017 law school graduate who attested that her normal billing rate ranges from $250.00 to $400.00 per hour, and Associate 2 is 2009 graduate who has been working on constitutional religious freedom litigation only since 2014 and attested that her normal billing rate ranges from $275.00 to $400.00 per hour. These associates of limited experience do not merit an hourly fee on par with significantly more experienced attorneys, and only $50 less than those attorneys' typical rate. That said, given that the more experienced attorneys did take some reduction in their own typical hourly rates, I do not find it fair to reduce these associates' rates to the bottom of their customary range; instead, a fee in the middle of the range is more appropriate: $325.00 for Associate 1 and $337.50 for Associate 2. Billed at these rates, the overall fee request of $92,884.65 shall be reduced by $6,565.75 to $86,318.90.[3]

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for and award of attorneys' fees is **GRANTED**, and Plaintiffs are awarded fees in the amount of $86,318.90.

Dated: October 30, 2019                                /s/ Freda L. Wolfson
                                                       Hon. Freda L. Wolfson
                                                       U.S. Chief District Judge

---

[3] While Plaintiffs seek both fees and costs, they have not provided the Court with anything to substantiate their request for costs. Therefore, no costs will be awarded.